UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAMELA JEAN VASSAR,

                          Plaintiff,

v.                                              8:14-CV-0977
                                                (GTS)
COMM'R OF SOC. SEC.,

                          Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF MARK A. SCHNEIDER                      MARK A. SCHNEIDER, ESQ.
  Counsel for Plaintiff
57 Court St.
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.                      SANDRA M. GROSSFELD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Pamela Jean

Vassar ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 10, 15, 18.) For the reasons set forth

below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born on September 1, 1962. (T. 216.) She obtained a general education diploma ("GED"). (T. 194.) Generally, Plaintiff's alleged disability consists of insomnia, depression, panic attacks, anxiety, and agoraphobia. (T. 277.) Her alleged disability onset date is April 30, 2007. (T. 272.) Her date last insured is December 31, 2012. (T. 110.) She previously worked as a "packer" and an administrative assistant. (*Id.*)

### B.      Procedural History

On July 27, 2009, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 273.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 5, 2011, Plaintiff appeared before the ALJ, Dale Black-Pennington. (T. 39-64.) On June 16, 2011, ALJ Black-Pennington issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 111-123.) On September 26, 2012, the Appeals Council ("AC") granted Plaintiff's request for review and remanded the case for further consideration. (T. 124-128.) On January 8, 2013, Plaintiff appeared before the ALJ, Nicholas Cerulli. (T. 65-108.) On March 14, 2013, ALJ Cerulli issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-38.) On July 31, 2014, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 15-33.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2012 and Plaintiff had not engaged in substantial gainful activity since April 30, 2007. (T. 15.) Second, the ALJ found that Plaintiff had the severe impairments of major depressive disorder and panic disorder with agoraphobia. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16-21.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform:

> a full range of work at all exertional levels, but with the following nonexertional limitations: [Plaintiff] must avoid concentrated exposure to hazards, such as unprotected heights and moving machinery; [was] limited to unskilled work involving routine and repetitive tasks with occasional changes in the work setting and occasional interaction with coworkers and supervisors, but no public interaction.

(T. 21.)

Fifth, the ALJ determined that Plaintiff was capable of performing her past relevant work as a "packager," and in the alternative, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 31-33.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes essentially five separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues she meets Listings §§ 12.04 and 12.06. (Dkt. No. 10 at 18-22 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ erred in weighing the opinion evidence in the record. (*Id.* at 22-28.) Third, Plaintiff argues the

ALJ erred in his credibility determination. (*Id.* at 28-34.) Fourth, Plaintiff argues the ALJ failed to consider Plaintiff's impairments in combination. (*Id.* at 34-38.) Fifth, and lastly, Plaintiff argues the ALJ failed to comply with the AC's remand order. (*Id.* at 38-39.)

### B. Defendant's Arguments

In response, Defendant makes five arguments. First, Defendant argues that Plaintiff's mental impairments did not meet Listing level severity. (Dkt. No. 15 at 4-8 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly evaluated the opinion evidence of the record. (*Id.* at 8-10.) Third, Defendant argues the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 10-13.) Fourth, Defendant argues the ALJ properly evaluated Plaintiff's impairments in combination. (*Id.* at 13-15.) Fifth, and lastly, the Defendant argues the ALJ complied with the remand order of the AC. (*Id.* at 15-16.)

### C. Plaintiff's Reply Brief

In reply, Plaintiff raises three arguments. First, Plaintiff argues Defendant did not fully set forth the standard of review. (Dkt. No. 18 at 1-3 [Pl.'s Reply Mem. of Law].) Second, Plaintiff argues Defendant erred in her assertion that the ALJ was entitled to rely on the opinion of the non-examining state agency consultant. (*Id.* at 3-8.) Third, and lastly, Plaintiff argues Defendant erred in asserting that an ALJ is permitted to accept some parts of a medical sources opinion and reject others. (*Id.* at 9-11.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

### A.    Whether the ALJ Made a Proper Determination at Step Three.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 4-8 [Def.'s Mem. of Law].) The Court adds the following analysis.

At step three of the sequential process the ALJ must determine whether the plaintiff's impairment, or combination of impairments, is of a severity to meet or equal the criteria of an impairment listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 404.926. Further, it is Plaintiff's burden to establish that her impairments were severe enough to satisfy the criteria of a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (to match any Listed impairment, plaintiff must satisfy all of the specified medical criteria).

The ALJ conducted a lengthy step three analysis and ultimately concluded that Plaintiff's impairments, or combination of impairments, did not meet or equal Listing § 12.04: Affective Disorders, or Listing § 12.06: Anxiety-Related Disorders. (T. 16-21.) Listings §§ 12.04 and 12.06 are met when the requirements in both paragraphs A and B are satisfied, or when the requirements of paragraph C are satisfied. It is not contested that Plaintiff's mental impairments of depression and anxiety satisfy the paragraph A requirements of §§ 12.04 and 12.06 respectively; therefore, for ease of analysis, this Court will focus on the requirements of paragraphs B and C.

Both Listings §§ 12.04 and 12.06 have identical paragraph B criteria. To satisfy the paragraph B criteria a plaintiff must have a mental impairment that results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1.

To satisfy the paragraph C criteria of Listing § 12.04, the mental impairment must have existed for at least two years and cause more than a minimal limitation on plaintiff's ability to perform basic work activities, with symptoms or signs currently

attenuated by medication or psychosocial support, and one of the following: 1) repeated episodes of decompensation, each of extended duration; or, 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or, 3) current history of one or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *Id.* To satisfy the paragraph C criteria of Listing § 12.06, the mental impairment must result in a complete inability to function independently outside the area of one's home. *Id.*

Although a non-examining medical expert, Paul Fulford, M.D., testified at the hearing that Plaintiff met Listings §§ 12.04 and 12.06, the ALJ nonetheless concluded Plaintiff did not meet, or equal, a Listing. In making his paragraph B and C analysis, the ALJ relied on Plaintiff's testimony (both in her written application and at the hearing) and the medical evidence in the record. The ALJ primarily relied on the medical opinion of the consultative examiner, Brett Hartman, Pys.D. and Plaintiff's treating physician, David Hinsman, M.D. The ALJ concluded that Plaintiff had moderate restrictions in: activities of daily living; social functioning; and concentration, persistence, or pace. (T. 18-19.) The ALJ further concluded that Plaintiff had no episodes of decompensation. (T. 19.) The ALJ also determined that Plaintiff failed to meet paragraph C criteria of either Listing. (T. 19-20.)

Plaintiff argues the ALJ erred in his step three determination as "a matter of fact and law" and that the Court should find Plaintiff disabled. (Dkt. No. 10 at 22 [Pl.'s Mem. of Law].) In support of her argument, Plaintiff provides a two sentence analysis in which she states that because Dr. Fulford opinioned she met Listings §§ 12.04 and 12.06, and

Dr. Hinsman's opinioned in May 2011 that she had severe psychiatric limitations, that she was therefore disabled. (*Id.*) Defendant counters that the ALJ properly analyzed Dr. Fulford's opinion according to the Regulations. (Dkt. No.15 at 7 [Def.'s Mem. of Law].)

Dr. Fulford testified at Plaintiff's supplemental hearing and opined that Plaintiff met Listings §§ 12.04 and 12.06. (T. 97-101.)[1] Dr. Fulford stated that in formulating his conclusion he relied upon the opinion of consultative examiner, Dr. Hartman and the non-examining State medical examiner. (T. 97.) Dr. Fulford never examined Plaintiff, but he did listen to her testimony at the hearing. (T. 97-98.) At the time of the hearing updated medical records from Dr. Hinsman and Dr. Liotta were still outstanding.

An ALJ evaluates the opinion of a medical expert under the same criteria as other medical source evidence. 20 C.F.R. §§ 404.1527(a)-(e), 416.927(a)-(e). Plaintiff essentially argues that Dr. Fulford's opinion should be adopted without any question; however, an ALJ is "not bound by any findings made by [non-examining] State agency medical or psychological consultants, or other program physicians or psychologists." *Id.* at §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). The Regulations also clearly state, "[a]lthough [the ALJ] consider[s] opinions from medical sources on issues such as whether [a plaintiff's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, . . . the final responsibility for deciding these issues is reserved to the Commissioner." *Id.* at §§ 404.1527(d)(2), 416.927(d)(2).

---

[1]     Dr. Fulford opined Plaintiff met Listing § 12.04 under the paragraph C criteria because she had a residual disease which resulted in a marginal adjustment such that even minimal increase in mental demands or change in environment would cause her to decompensate. (T. 99.) He further stated that Plaintiff lived in a highly supportive living arrangement. (T. 100.) Dr. Fulford opined Plaintiff had moderate restrictions in activities of daily living; marked restrictions in concentration, persistence, and pace; and, moderate restrictions in social functioning. (T. 101.) Dr. Fulford testified that Plaintiff satisfied the Listing requirements of § 12.06 under paragraph C as well. (T. 102.)

Here, the ALJ properly afforded Dr. Fulford's opinion "little weight," because his opinion was based on an incomplete record and other medical opinions in the record contradicted his opinion. (T. 20.) For example, Dr. Hartman observed only "mild" impairments in Plaintiff's attention and concentration and only "mild" impairments in Plaintiff's recent and remote memory skills. (T. 433.) Dr. Hartman noted Plaintiff had "moderate" problems relating adequately with others. (T. 434.) Although Dr. Hartman did note Plaintiff had "marked" difficulties dealing appropriately with stress, his overall limitations were less severe than those noted by Dr. Fulford. (*Id.*) Dr. Hartman also had the benefit, unlike Dr. Fulford, to examine Plaintiff in person.

Dr. Fulford's opinion was also inconsistent with Dr. Hinsman's treatment notations, which he did not have the opportunity to review as they were submitted after the hearing. Dr. Hinsman noted concerns of Plaintiff's "secondary gain" motives. (T. 473.) Further, Dr. Hinsman's treatment notes showed less severe and less frequent panic attacks over the course of treatment. (T. 474, 475, 461, 508.) Therefore, as a matter of law, the ALJ was not bound to blindly accept the opinion of Dr. Fulford that Plaintiff met a Listing; and further, the ALJ's step three determination was supported by substantial evidence as the ALJ properly relied on medical opinions and testimony in the record that did not indicate Listing level severity.

**B.    Whether the ALJ Properly Considered the Medical Opinion Evidence in the Record.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 10-13 [Def.'s Mem. of Law].) The Court adds the following analysis.

The following factors must be considered by the ALJ when deciding how much weight a medical opinion should receive: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126,134 (2d Cir. 2000).

Plaintiff argues the ALJ dismissed the opinions of Drs. Hinsman, Hartman, Liotta, and Fulford, and instead substituted his own lay opinion. (Dkt. No. 10 at 26 [Pl.'s Mem. of Law].) Plaintiff asserts the ALJ "cherry picked" the record, focusing on Dr. Hinsman's notation of Plaintiff's "secondary gain" issues, and further improperly dismissed opinions because they were based on subjective complaints. (*Id.* at 27.)

First, the ALJ did not "dismiss" the opinions of Drs. Hinsman, Hartman, Liotta and Fulford. The ALJ reviewed and analyzed each medical opinion in great detail in his decision and afforded specific weight to each opinion. The ALJ afforded the majority of Dr. Hinsman's opinion "great weight" (T. 24), the majority of Dr. Hartman's opinion "great weight" (T. 26), and Dr. Liotta's opinion "little weight" (T. 28). Second, the ALJ did not "cherry pick" the record. The ALJ's decision was very thoroughly written and examined all the opinion evidence in the record. The ALJ provided a detailed summary of the medical record; including opinions that were contrary to his ultimate RFC

11

determination, and provided a sufficient evaluation of his reasoning for not adopting those contrary opinions.

### i) Dr. Hartman

Dr. Hartman conducted a consultative exam of Plaintiff in March of 2010. (T. 430-435.) His mental status examination revealed Plaintiff's attention and concentration were "mildly impaired" and Plaintiff's recent and remote memory skills were "mildly impaired." (T. 433.) In a medical source statement Dr. Hartman opined Plaintiff was capable of following and understanding directions and instructions, she was able to perform simple and rote tasks, she had a "fair ability" to learn new tasks, she had mild attention and concentration problems, she had mild difficulties maintaining a regular schedule, she had mild difficulties performing complex tasks independently, she had mild difficulties making appropriate decisions, she had moderate problems relating adequately with others and she had marked difficulties dealing appropriately with the normal stressors of life. (T. 434.)

The ALJ afforded Dr. Hartman's opinion "great weight," with the exception of his opinion that Plaintiff had "marked" limitations dealing appropriately with the normal stressors of life. (T. 26.) The ALJ reasoned the majority of Dr. Hartman's opinion was consistent with the opinion of the State agency psychological consultant and Plaintiff's testimony, which he discussed in detail in his step three analysis. (*Id.*) However, the ALJ reasoned Dr. Hartman's opinion that Plaintiff had "marked" limitations in dealing with stress was not consistent with the record and appeared to be based solely on Plaintiff's own self reports. To be sure, a doctor's reliance on subjective complaints does not necessarily undermine his opinion of the claimant's functional limitations. *See Green-Younger v. Barnhart*, 335 F.3d 99 (2nd Cir. 2003). However, here, the Plaintiff's own

testimony regarding her activities of daily living suggested that she had less than "marked" limitations in her ability to function. For example, Plaintiff testified at the hearing that she attends motorcycle club meetings with her boyfriend or a good friend. (T. 91.) She further testified that she was able to drive to medical and legal appointments. (T. 76.) She stated she was able to care for her own personal needs, cook light meals, and clean. (T. 89.) She told Dr. Hartman that she gets along well with her boyfriend and friends. (T. 433.) She reported she can handle her own money and Dr. Hartman also opined she could. (T. 434.) Therefore, it was proper for the ALJ to rely on other medical evidence in the record, as well as Plaintiff's own testimony, in affording "little weight" to Dr. Hartman's opinion that Plaintiff had "marked" limitations in her ability to deal with stressors.

In her reply brief, Plaintiff asserts Defendant erred in her contention that an ALJ can afford different weight to different aspects of a medical opinion. (Dkt. No. 18 at 9 [Pl.'s Reply Mem. of Law].)

The Plaintiff is incorrect in her assertion. An ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). Therefore, the ALJ did not err in his evaluation of the opinion of the consultative examiner, Dr. Hartman, because, the ALJ was not required to accept all aspects of Dr. Hartman's opinion.

### ii)  Dr. Hinsman

Dr. Hinsman began treating Plaintiff for her mental impairments in 2009. (T. 374.) His treatment notes consist mostly of medication management. Initially, Dr. Hinsman was concerned that Plaintiff would not receive the relief she needed from medication alone and stressed Plaintiff should seek psychotherapy, but Plaintiff never complied with this medical advice. (T. 488.) In May 2011 Dr. Hinsman completed a check the box form, "Medical Examination for the Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination," for the State of New York Office of Temporary Disability. (T. 498-499.) The form rated the severity of limitations as "no evidence of limitations, moderately limited, or very limited." (T. 499.)[2]

Dr. Hinsman completed the form and checked the box for "no evidence of limitations" in the area of maintaining basic standards of personal hygiene and grooming. (T. 499.) Dr. Hinsman indicated that Plaintiff was "very limited" in the following areas of mental functioning: understanding and remembering instructions; carrying out instructions; maintaining attention/concentration; making simple decisions; interacting appropriately with others; maintaining socially appropriate behavior; and, functioning in a work setting at a consistent pace. (*Id.*) The ALJ afforded Dr. Hinsman's 2011 medical source statement "little weight." (T. 29.) In doing so the ALJ wrongly stated that Dr. Hinsman did not rate any functional limitations. (T. 29.) However, even if the ALJ properly read Dr. Hinsman's report, this form alone is not determinative of Plaintiff's disability as Plaintiff argues. (Dkt. No. 10 at 26 [Pl.'s Mem. of Law].)

---

[2]  To be sure, medical source statements from treating physicians are an insightful tool in assessing a plaintiff's functional abilities and limitations; however, this specific form completed by Dr. Hinsman was vague at best. The form provided no definitions or illustration as to what constituted "moderately limited" or "very limited." Therefore, this form in and of itself does not provide much guidance to the ALJ in making his RFC determination.

Substantial evidence in the record supports the ALJ RFC determination, because the ALJ properly relied on the opinion evidence of Dr. Hartman and Dr. Hinsman in making his RFC determination.

The ALJ did not err in taking into consideration Dr. Hinsman's noted concerns that Plaintiff may have "secondary gain" motivation. Dr. Hinsman noted in May of 2012 that Plaintiff failed to take an increase in her medication and also, that there "may be secondary gain issues involved at this point in time and [he] fear[ed] that even if [he] [could] improve her symptomatically she might not admit that." (*Id.*) Plaintiff argues the ALJ "cherry picked" this notation to support his ultimate finding. (Dkt. No. 10 at 27 [Pl.'s Mem. of Law].) As stated, *supra*, the ALJ provided a complete and thorough analysis of all the medical evidence in the record, not just Dr. Hinsman's notation of "secondary gain" concerns. Further, it was proper for the ALJ to take these concerns into consideration in formulating his RFC determination. *See Hopper v. Comm'r of Soc. Sec.,* No. 06-CV-0038, 2008 WL 724228, at *12 (N.D.N.Y. Mar. 17, 2008) (finding that a plaintiff's motivation, as well as medical evidence, can be used to evaluated the "true extent" of plaintiff's ability to engage in employment despite his disability).

### iii)     Dr. Liotta

Plaintiff argues the ALJ failed to properly weight the opinion evidence provided by Dr. Liotta, because the ALJ was not aware of the fact that Dr. Liotta was an examining consultant for the Commissioner in the North Country region. (Dkt. No. 10 at 28 [Pl.'s Mem. of Law].)[3] The fact that Dr. Liotta performs consultative examinations on behalf of the Commissioner should have no bearing on the weight the ALJ affords his

---

[3]     Dr. Liotta did not perform a consultative examination on Plaintiff in this case.

opinion. The ALJ properly evaluated Dr. Liotta's opinion using the factors outlined in the Regulations.

In her reply brief Plaintiff also raises a new argument that the ALJ improperly relied on the opinion evidence of the State agency medical consultant. (Dkt. No. 18 at 3-8 [Pl.'s Replay Mem. of Law].)[4] For the reasons stated in Part IV.B.(i)-(iii), the ALJ properly afforded weight to the medical opinions in the record and his RFC is supported by substantial evidence. The Regulations specifically allow for an ALJ to take the opinion of a non-examining State agency medical consultant into consideration. 20 C.F.R. §§ 404.1527(e), 416.927(e). Further, this Court would add that the State agency medical consultant's opinion mirrors the opinion of Dr. Hartman in almost all respects. The opinions vary only regarding Plaintiff's ability to function overall. Dr. Hartman's opinioned Plaintiff had a "marked" ability to function overall (T. 434), whereas, the State agency medical consultant opined she was "less than marked" in this regard (T. 419). It is well established that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve," and that in general an "ALJ is entitled to select between the conflicting evidence in the record." *Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir.2002). Therefore, it is in the discretion of the ALJ to resolve this apparent conflict. For the reasons discussed in Part IV.B(i)-(iii), this Court can find no legal error in the ALJ's evaluation of the medical opinions in the record; further, the ALJ's decision was properly supported by substantial evidence.

---

[4]      The Plaintiff sought, and obtained, permission from this Court to file a Reply Brief. (Dkt. Nos. 16, 17.) Defendant did not file an objection to Plaintiff raising a new argument.

**C.** **Whether the ALJ Properly Evaluated Plaintiff's Credibility.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 10-13 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of [a plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010), *see also Montaldo v. Astrue*, No. 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id*., at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency,

17

and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

The ALJ concluded that Plaintiff had underlying medically determinable impairments that could reasonably be expected to result in the symptoms alleged, but he had "reservations" as to whether the Plaintiff's assertions were fully credible. (T. 30.) The ALJ specifically outlined the Regulations and Social Security Ruling pertaining to making a credibility determination. (T. 29-30.)

Plaintiff argues the ALJ erred in discrediting her testimony based on Dr. Hinsman's notation of a concern of Plaintiff's possible "secondary gain" motivation. (Dkt. No. 10 at 32-34 [Pl.'s Mem. of Law].) Plaintiff's argument is misplaced. The ALJ did not discredit all of Plaintiff's testimony based on this one notation from Dr. Hinsman. As with his discussion of the medical evidence, the ALJ provided a thorough and detailed credibility analysis. The ALJ properly evaluated Plaintiff's testimony in accordance with the Regulation and Social Security Rulings. Further, it is the function of the ALJ, not the reviewing courts to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the plaintiff. *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982).

Having reviewed the record, the ALJ conducted a proper and detailed credibility analysis that followed the proper legal standards as provided in the Regulations. There was substantial evidence to support the ALJ's conclusion that Plaintiff's allegations were not entirely credible. For example, Plaintiff did not receive mental health treatment until

two years after her alleged onset date. (T. 23.) Plaintiff's activities of daily living were greater than her alleged limitations, as discussed in Part IV.A. Further, Plaintiff's treating physician raised concerns that Plaintiff may have motivation to not get better, or at least not admit to feeling better. (T. 473.) It was proper for the ALJ to take Dr. Hinsman's concerns into consideration when evaluating Plaintiff's credibility, and it is clear from the decision that Dr. Hinsman's concerns were but one factor in the ALJ's overall credibility analysis and determination.

> **D.** **Whether the ALJ Properly Evaluated the Combined Effects of Plaintiff's Impairments.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 13-15 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ failed to consider her mental impairments, her gastroesophageal disease ("GERD"), her arthritis, her carpal tunnel syndrome, her abdominal pain, and her low back pain in combination. (Dkt. No. 10 at 34-38 [Pl.'s Mem. of Law].) However, the ALJ properly evaluated these impairments at step two of the sequential process in making his determination that these impairments were non-severe. (T. 15-16.) The ALJ then proceeded through the sequential process, taking all of Plaintiff's impairments into consideration when making his RFC determination. As stated in Part IV.A-C, the ALJ's RFC determination and credibility determination were supported by substantial evidence. The ALJ properly evaluated the medical opinions in the record, including those regarding her non-sever impairments; and, the ALJ properly evaluated Plaintiff's credibility. Therefore, this Court finds that the ALJ took into

consideration the combined effects of Plaintiff's impairments, both sever and non-severe.

### E.      Whether the ALJ Properly Complied with the AC's Remand Order.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 15 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ failed to obtain an updated record. (Dkt. No. 10 at 38-39 [Pl.'s Mem. of Law].) This argument is without merit. The record contained updated treatment notes from Dr. Hinsman (T. 502), a mental status examination from Dr. Liotta (T. 521-528) and the medical testimony of Dr. Fulford. Of note, at the conclusion of the hearing the ALJ stated he was holding the record open for additional medical evidence. (T. 107.) Plaintiff's counsel responded that he could "cancel" the scheduled exam with Dr. Liotta, to which the ALJ stated he would prefer to have the medical evidence "especially in consideration of the [AC] remand . . .[because] one of the concerns of the [AC] [was] that the record was not sufficiently developed." (T. 107.) The ALJ properly developed the record in Plaintiff's case, he received updated medical records from Plaintiff's treating doctor and other medical professionals, and had a medical expert testify at the hearing. Further, given the discussion at the hearing between the ALJ and Plaintiff's counsel, it is clear that the ALJ was aware of the remand order and was diligent in obtaining all relevant and updated medical evidence.

In her reply brief, Plaintiff argues the Defendant did not set forth the proper standard of review. (Dkt. No. 18 at 1-3 [Pl.'s Reply Mem. of Law].) However, a complete reading of Plaintiff's argument reveals that Plaintiff is simply reiterating the argument she made in her original brief, that the ALJ failed to develop the record according to the

AC remand order. For the reasons stated herein, the ALJ properly developed the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. Nos. 10, 18) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:     August 5, 2015
           Syracuse, NY

Glenn T. Suddaby
U.S. District Judge